THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN MORRIS, Defendant-Appellant.

Fifth District   No. 5—85—0613

Opinion filed September 5, 1986.

Randy E. Blue and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Dennis Doyle, State's Attorney, of Waterloo (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, John Morris, was convicted of burglary after a trial by jury in the circuit court of Monroe County. (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(a).) He was sentenced to a six-year term of imprisonment. On appeal, he contends that the State's circumstantial evidence failed to exclude the reasonable probability that the defendant had merely received stolen property, that the trial court erred in not per-

mitting testimony that tended to exonerate defendant, and that the trial court erred in denying his motion for a new trial based on newly discovered evidence.

On February 18, 1985, between 12:30 a.m. and 1:50 a.m., the front window of Ollie's Tavern was broken and two "Elvis Presley" liquor decanters containing whiskey, two bottles of apple brandy, and some money from the cash register and from a glass next to the register were taken.

At approximately 1:50 a.m., Columbia police officer Tom Kocher was patrolling along Main Street and Officer David Berry was parked in his squad car in a parking lot off Main Street. As Officer Kocher drove into the parking lot to speak with Officer Berry, his headlights illuminated two men in the rear of the parking lot who appeared to be carrying some things and attempting to sneak past the parked squad car. The men immediately began to run down the alley, and Officer Kocher gave chase in his squad car. The men separated, and Officer Kocher continued to follow one suspect whom he later identified as the defendant.

During the chase, defendant paused beside a car which was parked in a well-lighted area. As Officer Kocher approached on foot, he was able to see clearly defendant's face. Defendant dropped the items he was carrying and proceeded to run back towards Main Street. Officer Kocher was able to keep defendant in his line of vision until the pursuit was taken over by Officer Berry, who eventually arrested defendant. Officer Kocher determined that the items dropped by defendant had broken and were obviously broken liquor decanters.

Officer Kocher then inspected the alley into which the other suspect had fled and discovered a pair of gloves, a hat and two bottles of liquor, one still bearing a receipt from Ollie's Tavern. Officer Kocher found no other trace of the suspect, whom he described as smaller than defendant and wearing a light-colored jacket.

At the jury trial, defendant based his case on the defense that the burglary was actually committed by William Lee Harper, Jr., a friend who was living with defendant and his pregnant wife. Defendant testified he and Harper left his apartment at about 11:30 p.m. on February 17, 1985, and went to a local bar to drink. At approximately 1:30 a.m. on February 18, they left the bar and accompanied a woman named Donna to her apartment, which was located near Ollie's Tavern. Harper left the apartment, and within a few minutes the defendant went outside to relieve himself. Outside, defendant noticed Harper near the tavern. Harper returned to where defendant was standing and gave him two decanters and asked defendant to carry

them to his apartment. Defendant admitted knowing the decanters were stolen, but denied committing the burglary or having any prior knowledge that Harper intended to break into Ollie's Tavern. Defendant agreed to carry the decanters and decided to take a shortcut down a nearby alley. Defendant testified that he ran when the squad car's headlights illuminated him because he had been in trouble before. Finally, defendant stated that he had placed the decanters under a car, but that he did not know how they were broken.

Defendant attempted to call several witnesses in his defense. In a hearing out of the presence of the jury, Harper, who had been charged with the instant burglary, elected to exercise his fifth amendment privilege on the advice of his attorney. Harper stated that if he were called to testify before the jury, he would again exercise his fifth amendment privilege. The trial court found that Harper's testimony would be highly prejudicial and would not be allowed.

Defendant also sought to admit the testimony of Debra and Ricky Venatta, his next-door neighbors. In an offer of proof out of the presence of the jury, Debra Venatta testified that at approximately 2 a.m. on February 18, 1985, Harper burst into their bedroom and exclaimed, "I ripped off the liquor store, Johnny is in jail, and Johnny didn't do it." The witness stated that Harper appeared to be very upset, emphatic and drunk. She testified that although she had only known Harper for a few days, her husband worked with him and had known him longer. She also testified that defendant's wife was present when Harper stated that defendant had not been involved in the burglary. Finally, the witness identified the gloves and hat that had been found by Officer Kocher as belonging to Harper. Although the trial court found that Harper's out-of-court statement was made spontaneously, shortly after the burglary, to close acquaintances and corroborated by other evidence in the case, it ruled that the Venattas' testimony was inadmissible because Harper was not available for cross-examination.

On appeal, defendant contends that his conviction must be reversed because it is based on insufficient evidence. In the alternative, defendant contends that he is entitled to a new trial because the trial court erred in ruling that the Venattas could not testify as to Harper's out-of-court statements which tended to exonerate defendant. Finally, defendant contends that the trial court abused its discretion in denying his motion for a new trial based on the newly discovered evidence that Harper was willing to testify as to defendant's innocence subsequent to his own guilty plea in the instant burglary.

■■ Defendant first contends that the evidence presented to

prove that he committed the burglary was insufficient because it was entirely circumstantial and it failed to exclude every reasonable hypothesis of innocence. Defendant argues that he merely received stolen goods from the actual burglar and that his actions in fleeing the police and attempting to conceal the decanters were consistent with his claim that Harper had committed the burglary.

A conviction may be based upon circumstantial evidence (*People v. Jenkins* (1983), 117 Ill. App. 3d 33, 39, 452 N.E. 2d 867, 872), which is proof of facts or circumstances that gives rise to a reasonable inference of other facts that tend to establish the guilt of the accused (*People v. Evans* (1981), 87 Ill. 2d 77, 83, 429 N.E.2d 520, 522). When the evidence of defendant's guilt is entirely circumstantial, the facts proved must be consistent with guilt and inconsistent with any reasonable hypothesis of innocence. (*People v. Evans* (1981), 87 Ill. 2d 77, 83, 429 N.E.2d 520, 522; *People v. Jenkins* (1983), 117 Ill. App. 3d 33, 39, 452 N.E.2d 867, 872.) Defendant's guilt must be so thoroughly established as to exclude every other reasonable hypothesis of innocence. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 78, 250 N.E.2d 651, 654; *People v. Jenkins* (1983), 117 Ill. App. 3d 33, 39, 452 N.E.2d 867, 872.) "However, proof beyond a reasonable doubt does not mean that the State is required to establish guilt beyond the possibility of doubt." (117 Ill. App. 3d 33, 39, 452 N.E.2d 867, 872.) The jury is not required to disregard the inferences that flow normally from the evidence nor to search "for a series of possible explanations compatible with innocence and elevate them to the status of reasonable doubt." (117 Ill. App. 3d 33, 39, 452 N.E.2d 867, 872.) "To warrant a conviction of a crime on circumstantial evidence, the proof must be of a conclusive nature and tendency, leading on a whole to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime." 117 Ill. App. 3d 33, 40, 452 N.E.2d 867, 872.

■ Defendant's explanation of the events on February 18, 1985, and the fact that Harper committed the burglary are direct evidence. (*People v. Jenkins* (1983), 117 Ill. App. 3d 33, 42, 452 N.E.2d 867, 875.) Thus, the evidence before the jury was not entirely circumstantial and the other circumstances outlined above would clearly support an inference of guilt had not other error occurred. In assessing the credibility of the witnesses, the jury as the trier of fact, was free to believe the State's witnesses and to disbelieve the defendant's explanations and speculations. We conclude that the evidence is sufficient to support the jury's verdict of defendant's guilt.

■ Defendant next contends that he was denied a fair trial be-

cause the trial court erred in not permitting defendant to present the testimony of Debra Venatta and Ricky Venatta which would tend to exonerate the defendant. Defendant argues that Harper was available to the prosecution for cross-examination because the prosecution could have granted Harper immunity or continued defendant's case until the case against Harper was finalized. Defendant also argues that Harper's statement was admissible even in the absence of his availability because it was made under circumstances that insured its trustworthiness.

"Generally an extrajudicial declaration not under oath, by the declarant, that he, and not the defendant on trial, committed the crime is inadmissible as hearsay though the declaration is against the declarant's penal interest." (*People v. Bowel* (1986), 111 Ill. 2d 58, 66, 488 N.E.2d 995, 999.) However, where justice requires, such an extrajudicial declaration may be admissible under the statement-against-penal-interest exception to the hearsay rule where there are sufficient indicia of trustworthiness. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 302, 35 L. Ed. 2d 297, 313, 93 S. Ct. 1038, 1049; *People v. Bowel* (1986), 111 Ill. 2d 58, 66, 488 N.E.2d 995, 999.) In *Chambers*, an extrajudicial statement was held admissible because the court found four factors which were sufficient indicia of trustworthiness: (1) the fact that the statement was made spontaneously to a close associate shortly after commission of the crime; (2) the fact that other evidence corroborated the statement; (3) the fact that the statement was self-incriminating and against the declarant's penal interest; and (4) the fact that the declarant was available for cross-examination. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49.) In *Bowel*, the Illinois Supreme Court held that the four factors enumerated in *Chambers* "are to be regarded simply as indicia of trustworthiness and not as requirements of admissibility. The question to be considered in judging the admissibility of a declaration of this character is whether the declaration was made under circumstances that provide 'considerable assurance' of reliability by objective indicia of trustworthiness." *People v. Bowel* (1986), 111 Ill. 2d 58, 67, 488 N.E.2d 995, 1000, quoting *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49, and *People v. Tate* (1981), 87 Ill. 2d 134, 144, 429 N.E.2d 470, 475.

In *Bowel*, the court found that the trial court did not abuse its discretion in ruling that the testimony of one who overheard a conversation between the defendant and the declarant was inadmissible because the potential witness had not been a party to the conversation

and the declarant was unavailable for cross-examination. (*People v. Bowel* (1986), 111 Ill. 2d 58, 68, 488 N.E.2d 995, 1000.) The court noted that the trial court did permit witnesses who were closely associated with defendant to testify concerning a conversation with declarant even though the declarant was unavailable for cross-examination. 111 Ill. 2d 58, 68, 488 N.E.2d 995, 1000.

In the instant case, the trial court specifically found that numerous indications of trustworthiness were present in the potential testimony of the Venattas. While "[t]he admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion" (*People v. Ward* (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696, 702), we believe that the trial court erred in this instance in ruling that the availability of the declarant was an essential element in establishing the admissibility of his extra-judicial statement. Defendant is entitled to a new trial.

Accordingly, we need not address defendant's final contention.

The judgment of the circuit court of Monroe County is reversed and the cause is remanded for a new trial in accordance with this opinion.

Reversed and remanded.

KASSERMAN, P.J., and WELCH, J., concur.