In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1584

Lynn Brooks,

Petitioner-Appellant,

v.

Jonathan R. Walls, Warden,
Menard Correctional Center,

Respondent-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-4049--Joe Billy McDade, Chief Judge.

Argued November 29, 2001--Decided February 1, 2002


  Before Coffey, Easterbrook, and Ripple,
Circuit Judges.

  Easterbrook, Circuit Judge.  Our appeal
presents a single but important question:
whether the one-year period for filing
federal collateral attacks on state
criminal judgments, see 28 U.S.C.
sec. 2244(d), has any effect on prisoners
of Illinois. Section 2244(d)(2) excludes
from this year any time during which "a
properly filed application for State
post-conviction or other collateral
review with respect to the pertinent
judgment or claim is pending". See Artuz
v. Bennett, 531 U.S. 4 (2000). A
collateral attack that is untimely under
state law is not "properly filed." See
Freeman v. Page, 208 F.3d 572 (7th Cir.
2000). But if the state decides not to
enforce its timeliness rules, and
considers on the merits a petition that
could have been dismissed as untimely,
then we treat that petition as "properly
filed" for purposes of sec. 2244(d)(2).
See Fernandez v. Sternes, 227 F.3d 977
(7th Cir. 2000); Jefferson v. Welborn,
222 F.3d 286 (7th Cir. 2000). The
complication is that Illinois permits,
and may require, trial judges to cast at
least a sidelong glance at the merits in
order to determine whether to
excusefailure to meet the deadline. See
725 ILCS 5/122-1; People v. Wright, 189

Ill. 2d 1, 723 N.E.2d 230 (1999); People v. Coleman, 183 Ill. 2d 366, 701 N.E.2d 1063 (1998). Thus any state prisoner whose delay was not caused by his own "culpable negligence" (which forecloses any consideration of an untimely filing) receives either plenary review or a judicial response along the lines of "this petition is late; and because it does not demonstrate a miscarriage of justice, I have decided not to excuse the untimeliness."

Lynn Brooks filed an untimely collateral attack and received a reply of this kind. The state's appellate court affirmed, holding expressly that Brooks' filing was untimely. Nonetheless, Brooks contends that any consideration of the merits, no matter how abbreviated, in order to determine whether to enforce the timeliness requirement, amounts to a decision on the merits, which means that the state judiciary considered the petition to be "properly filed" even if the state courts say that the filing was untimely or procedurally irregular in some other way. If this is so, then almost every collateral attack in Illinois is "properly filed" for purposes of sec. 2244(d)(2), and the tolling rules in sec. 2244(d) allow federal collateral attacks to be commenced long after the statutory year has expired. The district court held that Illinois' willingness to accept untimely filings in some cases does not imply that every filing is timely, and it dismissed Brooks' federal petition as untimely--which Brooks concedes it is, unless the time devoted to his untimely state petition is excluded by sec. 2244(d)(2). A judge of this court issued a certificate of appealability mentioning only the statutory timeliness issue. This certificate does not satisfy 28 U.S.C. sec. 2253(c)(2). But Brooks contends that his underlying theories of relief include at least one substantial constitutional claim, and as the state did not ask us before briefing to vacate the certificate we are entitled to address the antecedent statutory question. See Slack v. McDaniel, 529 U.S. 473, 483-85 (2000); Ramunno v. United States, 264 F.3d 723 (7th Cir. 2001).

Brooks starts from the major premise, articulated in Freeman, that proper filing is a matter of state law:

Whether a collateral attack is "properly filed" can be determined in a straightforward way by looking at how the state courts treated it. If they considered the claim on the merits, it was properly filed; if they dismissed it for procedural flaws such as untimeliness, then it was not properly filed.

208 F.3d at 576. He adds the minor premise that, when deciding whether to accept an untimely filing, a state court in Illinois gives some consideration to the merits. From this consideration of the merits Brooks concludes that even an untimely petition is "properly filed" in Illinois--and even if the state court holds expressly that it was not timely and that the delay will not be excused.

  The hidden premise of this syllogism is that when a state court decides a case on two grounds--one procedural, the other related to the merits--then the federal court ignores the procedural ground and treats the state's disposition as if it had been based wholly on the merits. Yet Harris v. Reed, 489 U.S. 255, 264 n.10 (1989), held otherwise for purposes of the independent-and-adequate-state-grounds doctrine. When a state ground (such as failure to make a contemporaneous objection, or to raise an issue on appeal) supports a state court's rejection of an argument based on federal law, that federal issue cannot be raised on collateral attack unless the prisoner shows cause for, and prejudice from, that default. E.g., Coleman v. Thompson, 501 U.S. 722, 729-35 (1991). We explained in Fernandez and Jefferson that a decision with respect to proper filing, as a state-law procedural ground, should be treated the way Harris specifies for other state grounds. This means two things of particular relevance: first, that when a state court decides the merits and asserts a procedural bar, the federal court must respect both rulings; second, that when state courts disagree about the right ground of decision, the ruling of the last state court to articulate a reason governs. Ylst v. Nunnemaker, 501 U.S. 797 (1991); Coleman, supra. Thus if, for example, a state trial court accepts an untimely petition, but the court of appeals rules that the petition should not have been accepted

and considered, it is the appellate ruling that controls. And when the last state court relies on dual grounds, the procedural ground means that the petition was not "properly filed."

   Brooks recognizes that under the approach of Harris (adopted for sec. 2244(d) cases by Fernandez and Jefferson) his state collateral attack was not "properly filed." The state's court of first instance relied on both a procedural ground (untimeliness) and the merits (to the extent the judge thought Brooks' substantive claim too weak to justify accepting an untimely petition). The state's court of appeals relied on the procedural ground exclusively. Nonetheless, Brooks contends, we implicitly overruled Fernandez and Jefferson (and departed from Harris) when holding in Rice v. Bowen, 264 F.3d 698 (7th Cir. 2001), that an untimely petition is "properly filed" for purposes of state law when the initial state court treats it as frivolous. A declaration of frivolousness is "on the merits," the panel noted in Rice. Our panel observed in Rice that "[o]ther circuits have . . . held that if a state's rule governing the timely commencement of post-conviction proceedings contains exceptions requiring courts to examine the merits of the petition before dismissing it, the petition, even if ultimately held to be time-barred, should be regarded as properly filed." 264 F.3d at 701-02, citing Dictado v. Ducharme, 244 F.3d 724, 727-28 (9th Cir. 2001), and Emerson v. Johnson, 243 F.3d 931, 935 (5th Cir. 2001). Dictado, which states its position most clearly, held that when a state court gives two grounds-- one procedural and resting on state-law conditions for filing, the other related to the merits of the federal claim--the procedural ground is disregarded and the petition treated as "properly filed" for purposes of sec. 2244(d). Dictado did not mention Harris, Fernandez, or Jefferson, nor did our panel in Rice.

   One panel of this court cannot overrule another implicitly. Overruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e). Rice did not propose to overrule any decision, and the panel did not circulate its opinion to the full court before release. So Fernandez and

Jefferson remain the law of the circuit--and they are incompatible with Dictado, at least if that opinion is read broadly. A narrow reading is possible. The independent-and-adequate-state-grounds doctrine, which Fernandez and Jefferson take sec. 2244(d)(2) to instantiate, operates only if the state ground is independent of the federal ground. So if, for example, a state were to provide something like "all meritorious collateral attacks are timely, but no unmeritorious collateral attack is timely," then timeliness would not be independent of the federal constitutional claim. A declaration that a given petition had been filed "too late" would represent no more than the state court's decision on the merits; and a state may not use procedural window dressing to avoid later federal collateral review. Perhaps this is what actually happened in Rice. But we do not think that Illinois systematically attempts to disguise resolution of the merits as a disposition of timeliness. The limit in 725 ILCS 5/122-1 is stated in terms of days, not in terms of the merits. It lacks the merits-related exceptions that the aedpa applies to federal courts. The year for a federal prisoner to file may be restarted if, for example, the Supreme Court renders a novel and retroactive constitutional decision. See 28 U.S.C. sec. 2255 para.6(3); Ashley v. United States, 266 F.3d 671 (7th Cir. 2001). Yet it would be fanciful to say that similar exceptions, if adopted at the state level, make all collateral attacks "properly filed"--even those collateral attacks that are not based on novel, retroactive developments in federal law. What Illinois has done makes even less use of federal law. The state's system seems to be modeled after the doctrine, used by state and federal courts alike, that untimely filings and other non-jurisdictional blunders in criminal cases may be disregarded in order to correct plain error. Deciding whether an error is "plain" often entails at least limited review of the merits. See Johnson v. United States, 520 U.S. 461 (1997); United States v. Olano, 507 U.S. 725 (1993). And it is settled (at least in this circuit) that a plain-error exception to a procedural rule does not compromise that rule's quality as an independent ground of decision.

Ever since Wainwright v. Sykes, 433 U.S.

72 (1977), federal courts have held that a defendant's failure to assert his constitutional contentions at the time, and in the manner, required by state law forfeits any entitlement to federal collateral review of those contentions, unless the defendant can show cause for and prejudice from the omission, or a miscarriage of justice. Stating the rule this way builds in a sort of plain-error exception, on top of the plain-error doctrine that states apply themselves, yet the Supreme Court does not view it as demolishing the rule by eliminating the "independence" of the procedural ground. We pointed out in Prihoda v. McCaughtry, 910 F.2d 1379, 1383-84 (7th Cir. 1990), that the dual-grounds rule of Harris is designed for these situations. A state court may say something like: "this argument has been forfeited because not raised in the proper way (such as by an objection to the jury instructions); and the defendant has not established plain error because there was no error at all." When it does this, it has not abandoned the procedural ground but has instead added a substantive failing to the procedural one. The independent-and-adequate-state-ground doctrine is one of long lineage, founded not only in respect for state tribunals but also in recognition that litigants should be given incentives to present their contentions as soon as possible, when errors can be avoided, rather than to save them up for presentation after the error has been committed. Sykes is based on pragmatism as well as comity. A state does not abandon the benefits of this doctrine by allowing plain-error review-- or by accepting untimely collateral attacks when the standards of plain error have been met. To the extent that Dictado holds that any merits-related exceptions to state timeliness rules make all state collateral attacks timely (and thus "properly filed") it is incompatible with the law established by the Supreme Court (in opinions such as Sykes and Harris) and by this circuit (in opinions such as Prihoda, Fernandez, and Jefferson).

The ninth circuit may well think that the broad reading of Dictado is the correct one, because it held in Smith v. Stewart, 241 F.3d 1191 (9th Cir. 2001), again without discussing Harris, that availability of plain-error review destroys the independence of a state's

procedural ground of decision. The defendant in Smith failed to make a timely argument that his prior lawyer had furnished ineffective assistance of counsel, and on collateral attack the state court deemed the contention forfeited. Nonetheless, the ninth circuit held, a federal court is entitled to disregard the forfeiture and resolve the ineffective-assistance claim on the merits, because Arizona (the state in question) can consider the merits when deciding whether to enforce its forfeiture rules. This is the same approach that the ninth circuit used in Dictado to determine proper filing under sec. 2244(d)(2).

Certiorari has been granted in Smith and a question certified to the Supreme Court of Arizona, so that it may decide whether forfeiture and the merits are bound together as the ninth circuit believed. See Stewart v. Smith, No. 01-339 (U.S. Dec. 12, 2001). If the state court gives an affirmative answer, the Supreme Court will need to decide whether the availability of a plain-error exception to a state procedural rule means that federal courts may ignore a litigant's failure to satisfy that procedural rule. In this circuit, at least for the time being, Prihoda and other cases give anegative answer. Thus we cannot accept the broad reading of Dictado. And it follows that we do not treat Rice as adopting that broad reading either, for if Rice had done so it would have needed to overrule Fernandez and Jefferson, which it did not.

There is another possible reading of Rice: as a proposal to replace (for purposes of sec. 2244) the rule announced in Harris, Coleman, and Ylst that the ruling of the last state court is dispositive (for purposes of locating an independent and adequate state ground) with a rule that the decision of the first state court determines whether a state collateral attack was "properly filed." That would not do Brooks any good, however, for in his case the state's court of first instance treated his petition as untimely. We think it best to leave to future litigation, when the matter has been fully briefed, the question whether federal courts should disregard state appellate decisions (as Rice seemingly did) when deciding whether

a state collateral attack has been "prop
erly filed." One could say in support of
such an approach that it avoids
mousetrapping the prisoner. If the
state's court of first instance accepts a
collateral attack and resolves it on the
merits, the prisoner sensibly will assume
that time has been tolled under
sec. 2244(d)(2); by the time the state's
court of appeals reverses, it may be too
late to file a federal petition. Yet in
many cases (of which Brooks' is a good
example) counsel for the state argues
from the get-go that the petition is
untimely, and this puts the prisoner on
notice of the need to file a
precautionary federal petition (see
Tinker v. Hanks, 172 F.3d 990 (7th Cir.
1999); Freeman, 208 F.3d at 577) in case
the state judiciary, trial or appellate,
agrees with that view. Brooks was not
misled and knew, from the instant the
state court rejected his petition as
untimely, that the clock was ticking
under sec. 2244(d).

These considerations also knock out
Brooks' request for equitable estoppel,
beyond the circumstances detailed in
sec. 2244(d). The state did not mislead
him; to the contrary, it has asserted
throughout that the state collateral
attack was not properly filed, providing
Brooks with information that should have
led him to get the federal petition on
file earlier. We held in Taliani v.
Chrans, 189 F.3d 597 (7th Cir. 1999),
that equitable tolling or estoppel is not
absolutely negated by the list of tolling
circumstances in sec. 2244(d) but added
there--and have reiterated since, see
Owens v. Boyd, 235 F.3d 356 (7th Cir.
2000)--that because the aedpa has its own
list of tolling circumstances, only "some
impediment of a variety not covered in
sec. 2244(d)(1) [that] prevents the filing
of a federal collateral attack" (235 F.3d
at 360) could suffice. Otherwise
"estoppel" is hard to differentiate from
judicial disagreement with the statutory
list of circumstances that extend the
time. United States v. Brockamp, 519 U.S.
347, 351-52 (1997), holds that such lists
are presumptively closed-ended. Nothing
prevented Brooks from filing earlier, and
no deceit by the state has been alleged,
so he cannot take advantage of any extra-
statutory extension of time.

One further argument requires only brief

attention. Brooks contends that his appeal within the state system was itself "a properly filed application for State post-conviction or other collateral review"; if the time devoted to the appeal is excluded from the calculation, then Brooks' federal petition is timely. This finds support in Villazana v. Page, 1999 U.S. Dist. Lexis 7927 *11-13 (N.D. Ill. May 5, 1999), but the position is unsound. A notice of appeal is not an "application for . . . collateral review." The "application" is the request (here a petition for a writ of habeas corpus), filed in the court of first instance. Some states permit appellate courts to be courts of first instance for this purpose, and when an application's first stop is an appellate court, time devoted to its consideration is excluded under sec. 2244(d)(2). But Brooks began in the state's circuit court, not in its appellate court, and his notice of appeal was not a new "application." An appeal marks the continuation of existing litigation, not the initiation of new litigation. This is why, for example, we held in Fernandez that time after a trial court's decision, and before the filing of a timely notice of appeal, is excluded by sec. 2244(d)(2): there is just one continuous case.

Treating a notice of appeal as an "application for . . . collateral review" not only would require the time between trial and appellate courts to count against the statutory year (surprising many petitioners who have been anticipating its exclusion) but also would knock out most appeals within the federal system. For a prisoner needs appellate approval to launch a second or successive federal collateral attack. See 28 U.S.C. sec. 2244(b), sec. 2255 para.8. If a notice of appeal is itself an "application for . . . collateral review" then any prisoner who fails to obtain relief from the district court needs permission under sec. 2244(b) or sec. 2255 para.8 to appeal (because the appeal would be the second federal collateral attack)--and given the limitations of those sections, which are much more restrictive than the certificate of appealability under sec. 2253(c), that request would be denied almost routinely. Brooks himself could not obtain appellate review of the order dismissing his petition, because he does not meet the requirements for a second or

successive collateral attack. So we hold that an appeal is not a new collateral attack, a decision that is much to the benefit of most prisoners seeking collateral review, even though it means that Brooks' federal application is untimely.

Affirmed