In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-1584

LYNN BROOKS,

*Petitioner-Appellant*,

*v.*

JONATHAN R. WALLS, Warden,
Menard Correctional Center,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-4049—**Joe Billy McDade**, *Chief Judge*.

On Petition for Rehearing

DECIDED AUGUST 23, 2002

Before COFFEY, EASTERBROOK, and RIPPLE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Lynn Brooks' federal collateral attack on his state conviction is untimely unless his prior collateral attack in state court satisfies 28 U.S.C. §2244(d)(2): "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Following *Fernandez v. Sternes*, 227 F.3d

977 (7th Cir. 2000), and *Jefferson v. Welborn*, 222 F.3d 286 (7th Cir. 2000), plus dictum in *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), we held earlier this year that Brooks' federal proceeding is barred by the one-year period of limitations in §2244(d)(1)(A). See 279 F.3d 518 (2002). We started from the premise that an untimely application for state collateral relief is not "properly filed" and therefore does not extend the time in which to file a federal petition. In this case, both trial and appellate courts in Illinois held that Brooks' petition had been filed too late under 725 ILCS 5/122-1(c), which gives a prisoner a maximum of six months from the conclusion of direct review to commence a collateral attack.

A proviso in §5/122-1(c) gives extra time to a prisoner who "alleges facts showing that the delay was not due to his or her culpable negligence." Inquiry into "culpable negligence" may overlap the merits. If, for example, the prisoner contends that the prosecutor withheld material exculpatory evidence, see *Brady v. Maryland*, 373 U.S. 83 (1963), the concealment also may explain why delay in filing the petition is not the prisoner's fault. A court must decide whether withholding occurred (and whether the defendant should have found the information on his own anyway) before coming to a conclusion about timeliness. Moreover, some appellate decisions have suggested that trial courts should be more willing to find a lack of "culpable negligence" when the prisoner's substantive claim involves ineffective assistance of counsel, for bad advice about filing deadlines may be one aspect of substandard assistance, and many ingredients of an ineffective-assistance claim take time to discover. See, e.g., *People v. Whitford*, 314 Ill. App. 3d 335, 732 N.E.2d 649 (5th Dist. 2000). Cf. *People v. Rissley*, 2001 Ill. LEXIS 241 (Mar. 15, 2001) (bad legal advice rendered after the conclusion of the direct appeal does not show lack of culpable negligence, because the entitlement to appointed counsel ends with the appellate process). Thus Illinois courts sometimes examine the merits, at least

in a preliminary way, before deciding whether a petition is timely. Brooks, who received the benefit of a joint inquiry into timeliness and the merits, contended that his application therefore must have been "properly filed" for purposes of §2244(d)(2) as *Artuz* understood that phrase. We disagreed and held by parallel to *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989), that a dual-ground decision—one that rests on *both* the merits *and* a finding of untimeliness—means that the petition was not "properly filed". Federal courts must respect both aspects of a dual-ground holding, we concluded.

Brooks' petition for rehearing and rehearing en banc contends that under *Artuz* every petition that induces a state court to address the merits of the claim must have been "properly filed" and that *Rice v. Bowen*, 264 F.3d 698 (7th Cir. 2001), commits the circuit to that reading of §2244(d)(2). The petition also contends that our holding conflicts with *Smith v. Walls*, 276 F.3d 340 (7th Cir. 2002), a decision of another panel released contemporaneously and not discussed in our opinion. (*Rice*, by contrast, was discussed at length.) We deferred consideration of the petition until the Supreme Court released its decisions in *Carey v. Saffold*, 122 S. Ct. 2134 (2002), and *Stewart v. Smith*, 122 S. Ct. 2578 (2002). The first of these presented a question about the relation between timeliness and §2244(d)(2), and the second arose from a decision of the ninth circuit that our opinion had declined to follow. Both of these decisions had the potential to affect the outcome here.

*Saffold* shows that our decision was correct. The question in *Saffold* was whether an original petition for collateral relief, filed in the Supreme Court of California, counted as a "properly filed" application given California's unusual system of collateral review. The Court's conditionally affirmative answer—yes, if the application is timely under state practice—refutes Brooks' principal submission. For

*Saffold* tells us (ending any ambiguity left by *Artuz*) that to be "properly filed" an application for collateral review in state court must satisfy the state's timeliness requirements. This means that decisions such as *Nara v. Frank*, 264 F.3d 310 (3d Cir. 2001); *Smith v. Ward*, 209 F.3d 383 (5th Cir. 2000); *Emerson v. Johnson*, 243 F.3d 931 (5th Cir. 2001); and *Dictado v. Ducharme*, 244 F.3d 724 (9th Cir. 2001), to the extent they hold that petitions untimely under state rules nonetheless may be deemed "properly filed," were wrongly decided. *Saffold* added (122 S. Ct. at 2141):

> If the California Supreme Court had clearly ruled that Saffold's 4½-month delay was "unreasonable," [California's word for "untimely"] that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was "entangled" with the merits.

This addresses Brooks' remaining contentions. *Saffold* tells us that both aspects of a dual-ground decision (substance and procedure) must be respected, so that an untimely petition is not "properly filed" even if the court also addresses the merits—whether or not the "timeliness ruling was 'entangled' with the merits." So even when the decision about timeliness depends in part on some aspect of the merits, a conclusion that the petition had been filed too late for purposes of state practice means that it was not "properly filed" for purposes of §2244(d)(2).

*Stewart v. Smith*, read in conjunction with *Ake v. Oklahoma*, 470 U.S. 68 (1985), suggests that the word "entangled" in *Saffold* must not be confused with "dependent." In the course of reversing a decision that our opinion had declined to follow, the Supreme Court wrote that a state's consideration of the nature of the constitutional claim being presented does not prevent its decision from representing an independent and adequate state ground. Only if the nominally procedural decision actually "rested primarily on

a ruling on the merits" (122 S. Ct. at 2581) would independence be compromised. It is easy to see how a timeliness inquiry (or any other aspect of the decision whether a collateral attack was "properly filed") could be *so* dependent on the merits that it really represented *nothing but* a decision on the merits. Suppose Illinois had a rule (like California's) requiring a collateral attack to be commenced within a "reasonable" time and added that any meritorious filing would be deemed to satisfy that rule. Then a conclusion that a particular application was late would represent nothing except disagreement with the petitioner's constitutional argument. In such a system the only sensible understanding would be that *every* collateral attack was timely for purposes of state law, because every one was enough to precipitate a decision on the merits.

Illinois, however, does not have such a system. Its timeliness rule is quantitative (six months from the end of the direct appeal or three years from the conviction, whichever is sooner), and the exception for delay that is not attributable to "culpable neglect" is stated in terms that are neutral with respect to the substantive theory of relief. The main function of the exception is to handle contentions that depend on facts that belatedly come to light. And although these facts may give rise to constitutional theories, the justification for delay is in the normal case independent of their merit. A belated *Brady* contention, for example, could be justified on the ground that the defendant learned the information outside the six-month period, but the claim still would fail if the information were not material or any error were harmless. Unless the Supreme Court of Illinois tells us otherwise, therefore, we shall treat untimeliness decisions under 725 ILCS 5/122-1(c) as independent of the merits, even if potentially "entangled" with them. Dual-ground decisions in Illinois, as in most other states, therefore mean (as *Saffold* said) that the state application was not "properly filed".

Neither *Rice* nor *Smith v. Walls* is incompatible with this conclusion. *Smith v. Walls* holds that a successive collateral attack in Illinois is not *automatically* outside the domain of "properly filed" collateral attacks. Nothing in Illinois law permits such filings—but neither does any rule forbid them or subject them to prior-approval requirements, as in Indiana. See *Tinker v. Hanks*, 255 F.3d 444 (7th Cir. 2001). An application is "properly filed" under *Artuz* when its "delivery and acceptance are in compliance with the applicable laws and rules governing filings" (531 U.S. at 8). A successive application in Indiana is not in accord with procedural rules, unless the state court has granted advance permission; a successive application in Illinois may be in conformity with these rules. Brooks reads *Smith v. Walls* to say that *every* successive application in Illinois is "properly filed", and as most successive applications will be outside the six-month limit set by 725 ILCS 5/122-1(c) this must mean that timeliness is not essential to proper filing. Yet *Smith v. Walls* held no such thing. Illinois did not argue that Smith's successive application had been rejected as untimely or was procedurally irregular in some other way. Any given successive application may fit within the proviso for delay that was not caused by the prisoner's "culpable negligence." *Smith v. Walls* had nothing to say one way or the other about delay; and we know from *Saffold* that if a state court in the future dismisses a successive application as untimely, that decision will establish that the application was not "properly filed" (unless the timeliness decision was so dependent on the merits that the interaction went beyond "entanglement").

As for *Rice*: although our original opinion was critical of that decision, we did not purport to overrule it. Although language in *Rice* suggesting that an application necessarily was "properly filed" if any state court addressed the merits cannot be reconciled with *Saffold*, the Supreme Court's decision leaves open a second way to understand the outcome

in *Rice*. In that case, the state's trial court summarily dismissed the application as frivolous (a merits decision) without mentioning timeliness; the appellate court affirmed in a brief decision mentioning both timeliness and the merits but not discussing the relation between them. This created ambiguity because Rice had contended that the state forfeited its timeliness argument by not presenting it to the trial court. The appellate court's failure to discuss this problem, and the brevity of its order, did not rule out the possibility that the court thought that any frivolous petition must be untimely as well. A reader could not readily tell whether the appellate court deemed the application untimely because it was late or because timeliness and the merits came to the same thing. If the former, then the application was not "properly filed"; if the latter, then it was properly filed, was decided on the merits (exclusively), and the time to seek federal review was tolled by §2244(d)(2). In *Saffold* itself the Supreme Court concluded that a decision of the Supreme Court of California denying an original application "on the merits" *and* for "lack of diligence" was ambiguous; "lack of diligence" differs linguistically from "unreasonable delay," that court's canonical phrase for "untimely," and the Justices concluded that perhaps in state practice the phrases have a different meaning. They remanded so that the district court or court of appeals could unravel the ambiguity. Because it is *possible* for a timeliness decision under 725 ILCS 5/122-1(c) to be entirely dependent on the merits (as opposed to just "entangled" with the merits), courts must pay careful attention to the reasons why particular collateral attacks fail in Illinois and may have to follow the example of *Saffold*. It seems best to us to treat *Rice* as such a case, which today would be handled using *Saffold*'s language but would not necessarily come out differently. But it is not necessary to tie up *all* loose ends. It is enough to hold, as *Saffold* instructed, that an unambiguous dual-ground decision (untimeliness plus the merits)

shows that the state application was not "properly filed" for purposes of §2244(d)(2) even if the issues were entangled.

The petition for rehearing is denied. No judge called for a vote on the petition for rehearing en banc, which therefore is denied.


A true Copy:

       Teste:


                           _____
                           *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*