Jonathan COLE, Plaintiff,

v.

Jon E. LITSCHER;  Michael Catalano; Gerald A. Berge; Prison Health Services, Inc.;  Pam Bartels;  John W. Kussmaul;  D. Esser;  Fuerstenburg; Jantzen;  Tim F. Haines;  Shirley Olson;  Kerry Melby;  and, Becky Manning, Defendants.

No. 04–C–116–C.

United States District Court, W.D. Wisconsin.

Oct. 25, 2004.

See also, 2004 WL 1946392.

Jonathan P. Cole, pro se.

John J. Glinski, Assistant Attorney General, Madison, WI, Douglas S. Knott, Leib & Katt, S.C., Milwaukee, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action in which plaintiff Jonathan Cole seeks monetary, declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. This action was filed in July 2002 in the United States District Court for the Eastern District of Wisconsin. On March 7, 2003, District Judge Lynn Adelman screened the voluminous first amended complaint pursuant to 28 U.S.C. § 1915A. The first amended complaint contained the claims of fifteen plaintiffs. On February 27, 2004, the action was transferred to this district when Judge Adelman granted the motions for change of venue filed by defendants Berge, Bartels, Catalano, and Prison Health Service, Inc. In an order dated March 15, 2004, I explained that prisoner plaintiffs are not allowed to file group complaints in this district and severed the claims of all plaintiffs pursuant to Fed.R.Civ.P. 21.

This case is now before the court on the motion for partial dismissal. Defendants argue that plaintiff failed to exhaust all available administrative remedies with respect to 12 of the claims on which he was allowed to proceed. In support of their motion, defendants have submitted all 121 inmate complaints that plaintiff filed during the time he has been in the Wisconsin Secure Program Facility in Boscobel, Wisconsin up until the date on which he initiated this suit. Plaintiff has not filed a brief or any further documentation of his use of the inmate grievance system in opposition to defendants' motion.[1] Because none of the 121 inmate complaints contain allegations about seven claims for which defendants seek dismissal, their motion will be granted with respect to these claims. In addition, I will grant defendants' motion with respect to two claims

1. Despite plaintiff's failure to oppose defendants' motion, one of plaintiff's former co-plaintiffs in this case, Vincent P. Whitaker, has submitted for filing at plaintiff's request inmate complaint No. SMCI–2001–7587. In SMCI–2001–7587, Whitaker, plaintiff and two other inmates challenged an internal handbook policy that provides that inmates on a certain administrative level are permitted to have only a standard dictionary and one religious book in their cells and that legal materials are confiscated. This submission cannot be considered. Only parties or their legal representatives are permitted to file materials with the court. Even if I could consider this submission, it would not help plaintiff. Of the claims on which plaintiff was allowed to proceed, only three are arguably related to the concerns raised in SMCI–2001–7587: plaintiff's claim that defendant Berge had a library policy that prevented plaintiff from filing a brief in a state court action; plaintiff's claim that defendant Haines confiscated plaintiff's legal materials as contraband; and plaintiff's claim that defendant Berge had a policy that caused some of plaintiff's personal property to be destroyed. Defendants concede that plaintiff exhausted all three of these claims in other inmate complaints plaintiff filed separately. Dfts.' Br., dkt. # 43, at 5–6. SMCI–2001–7587 does not relate to any of the claims that defendants are challenging as unexhausted.

for which plaintiff filed an inmate complaint but failed to exhaust his remedies completely before initiating this action.

There is evidence that plaintiff filed grievances for two of the claims that defendants challenge in their motion. However, defendants did not submit any materials documenting the procedural history of these inmate complaints. It may be that plaintiff failed to exhaust these grievances completely but it is impossible to make this determination without further information. Accordingly, I will stay a decision with respect to these claims. If defendants fail to submit this missing information, I will deny their motion for failure to meet their burden. In addition, defendants' motion will be denied with respect to one claim for which plaintiff filed an inmate complaint and later appealed its dismissal. Although the appeal was untimely, the reviewing official addressed the appeal on the merits. Finally, plaintiff's procedural due process claim will be dismissed pursuant to 28 U.S.C. § 1915A for lack of legal merit.

## OPINION

The 1996 Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Court of Appeals for the Seventh Circuit has held that "[e]xhaustion of administrative remedies, as required by § 1997e, is a condition precedent to suit" and that district courts lack discretion to decide claims on the merits unless the exhaustion requirement has been satisfied. *Dixon v. Page,* 291 F.3d 485, 488 (7th Cir.2002); *see also Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 535

(7th Cir.1999). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim." *Massey v. Helman,* 196 F.3d 727, 733 (7th Cir.1999). Exhaustion has not occurred unless an inmate follows the rules that the state has established governing the administrative process. *Dixon,* 291 F.3d at 491; *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.2002). Defendants contend that plaintiff has failed to exhaust twelve of his twenty-seven claims.

### A. Plaintiff's Claims

Before addressing the merits of defendants' argument, I will address their contention that plaintiff is proceeding on twenty-seven separate claims. Because of the unique procedural posture of the case, it may not be clear to the parties just what the viable claims in this case are. As noted earlier, at the time Judge Adelman screened the complaint, there were fifteen co-plaintiffs involved. Plaintiff was not involved in all of the claims for which Judge Adelman granted leave to proceed. In the order severing the claims of the individual plaintiffs, I did not list those claims that apply to Cole. However, I did dismiss a claim common to all plaintiffs, that the level system at the Wisconsin Secure Program Facility deprives inmates of all reading material except a dictionary and a religious text in Level 1 and certain other personal property, newspapers and magazines in Level 2. In *Williams v. Lomen,* 02–C–70–C, 2003 WL 23163053 (W.D.Wis. Jan.27, 2003), I concluded that the facility had a legitimate penological interest in its five-tiered incentive program, which was designed to provide inmates with an incentive to improve their conduct, and that prison officials do not violate an inmate's

First Amendment rights by subjecting them to such a program.

After reviewing Judge Adelman's screening order, I conclude that for the most part, defendants have accurately distilled those claims on which plaintiff has been allowed to proceed. Those claims are as follows:

1–4. Defendants Esser and Furstenberg retaliated against plaintiff for filing inmate complaints by

(1) threatening him with having to eat "seg loaf";

(2) issuing him a conduct report and placing him on a "restrictive continuum" for ten days;

(3) requiring him to sit on the floor without any clothes on when his cell was opened;

(4) turning on high beam lights in his cell for three hours.

5–10. Defendant Kussmaul retaliated against plaintiff for filing inmate complaints by

(5) entering false allegations in his conduct log;

(6) installing a video camera in his cell;

(7) ordering that he be placed in a cell containing toxic fumes;

(8) transferring him from the "Alpha Unit" to the "Echo Unit" where plaintiff believed he was unsafe because of toxic fumes;

(9) requiring him to wear ankle cuffs that were too small and cut his legs;

(10) denying him access to the library.

11. Defendant Berge and Litscher had a policy requiring plaintiff to stand naked during clothing exchanges with female correctional officers for the purpose of embarrassing plaintiff in violation of his Eighth Amendment right to be free of cruel and unusual punishment.

12. Defendant Berge and Litscher had a policy that deprived plaintiff of a prayer rug, prayer cap and a cross, in violation of the First Amendment free exercise clause.

13. On April 14, 2002, defendant Jantzen prevented plaintiff from sending a brief to the Wisconsin Court of Appeals and Attorney General in violation of the First Amendment by denying plaintiff's request for legal loan disbursement to cover the cost of postage because "the date on the disbursement [was] wrong."

14. On May 15, 2002, an unidentified defendant[2] did not send a complaint that plaintiff tried to mail to an attorney in violation of plaintiff's due process and First Amendment rights.

15. Defendant Berge's library policy is so restrictive that plaintiff was prevented from timely filing a brief with

---

**2.** Plaintiff brought many of his claims against Doe defendants. On February 26, 2004, Judge Adelman ordered plaintiff to identify the names of those against whom he was allowed to proceed. Plaintiff identified all but two of the Doe defendants. In an order dated April 21, 2004, I ordered that the caption and text of plaintiff's complaint be amended to reflect these identifications and I dismissed plaintiff's claims against the two Doe defendants whom plaintiff did not identify. However, many of plaintiff's claims were not directed at any defendant in particular, Doe or otherwise. It may be that plaintiff is unable to identify these officers. It is also possible that plaintiff knows who they are but did not name them in response to Judge Adelman's order. In either case, these claims will fail; plaintiff bears the burden of proving personal involvement on the part of at least one defendant. Nonetheless, dismissing these claims at this juncture would be premature. Plaintiff may be able to succeed if he is able to prove that one of the named defendants was personally involved in the alleged violation.

a Wisconsin state court and as a result, his case was dismissed.

16. Defendant Haines confiscated legal documents from another inmate who was assisting plaintiff in litigating two cases in state court; the documents related to plaintiff's two state court actions.

17. Defendant Melby disclosed the name of plaintiff's prescribed medication to a prison official who was writing plaintiff a conduct report, defendant Bartels consented to the disclosure of plaintiff's medical record and defendant Catalano's failure to provide adequate training and supervision to his employees caused these disclosures which violated plaintiff's constitutional right to privacy.

18. Defendants Prison Health Services, Bartels, Manning and Olson violated plaintiff's rights under the Eighth Amendment by failing to provide him with adequate and appropriate medical care.

19. Defendant Prison Health Services and Bartels violated the Eighth Amendment by failing to provide plaintiff with adequate mental health care services.

20. Defendant Prison Health Services and Bartels violated plaintiff's rights under the Eighth Amendment by having policies that deprive plaintiff of milk that is not non-fat and adequate amounts of food.

21. Defendant Berge and Litscher had a policy under which plaintiff was denied food for days at a time for refusing to keep the lights in his cell on.

22. Defendants Berge and Litscher denied plaintiff access to adequate indoor and outdoor recreation and exercise facilities.

23. Defendant Berge and Litscher have a policy under which inmates are allowed to exchange their empty toilet paper roll for a new one only three times each week and which provides no provision for an emergency situations, in violation of the Eighth Amendment.

24. An unidentified defendant deprived plaintiff of shampoo, conditioner and hair grease despite knowing that plaintiff's scalp was cracked and bleeding, in violation of the Eighth Amendment.

25. Defendants Berge, Haines and Kussmaul intentionally injured plaintiff by forcing him to wear ankle cuffs that they knew were too tight.

26. Defendants Berge and Litscher have subjected plaintiff to sleep deprivation by forcing him to live in a constantly illuminated cell and defendant Jantzen subjected plaintiff to sleep deprivation by kicking his door and putting on "high beam lights" in the middle of the night.

27. Defendant Berge adopted a policy that caused plaintiff's cell temperature to be either extremely hot or cold.

28. An unidentified defendant destroyed some of plaintiff's personal property in violation of his right to due process.

Defendants identified all of these claims except 17–19. In addition, they identified two additional claims that I have excluded from this list: (1) Plaintiff's claim that defendant Berge violated plaintiff's First Amendment free exercise rights by adopting a policy under which plaintiff was denied a "daily bread study guide" and (2) plaintiff's claim that defendant Berge violated plaintiff's First Amendment free speech rights by denying him access to a telephone for lengthy periods. Although these were identified as distinct claims in Judge Adelman's screening order, the

complaint makes clear that they are simply sub-parts of plaintiff's broader challenge to the five-tiered incentive program. Plaintiff alleged that he was denied the daily bread guide and telephone access because of his level in the five-tiered system. Plt.'s Cpt., dkt.# 1, at 11, ¶ 62 ("The plaintiffs are not allowed religious literature of any kind except for religious texts until they get to a certain level. This has deprived plaintiff Cole of a daily bread study guide ....") and at 21, ¶ 135 ("[P]laintiffs have been denied phone access for months, due to a restriction out of the restrictive management continuum."). I have already found that plaintiff is foreclosed from challenging the five-tiered incentive program by *Williams,* 02–C–70–C.

### B. *Plaintiff's Failure to Respond*

Plaintiff has not submitted a brief in opposition to the motion to dismiss. Instead, he has submitted motions seeking more money, time and legal counsel. In denying plaintiff's motion for an extension of time in which to respond to defendants' motion to dismiss because his access to legal research was limited, I advised plaintiff that

> Defendants have made it clear in their brief in support of the motion to dismiss precisely which of plaintiff's claims have not been the subject of inmate complaints, according to the Department of Corrections's administrative records. The law in the Seventh Circuit governing administrative exhaustion under 42 U.S.C. § 1997e is clear. If the factual record reveals that plaintiff did not file inmate complaints and pursue the course of administrative appeals required by the Department of Corrections with respect to any claim, plaintiff's complaint will have to be dismissed as to that claim. Therefore, plaintiff should be focusing on the factual record and not on legal argument in opposition

to the motion to dismiss. If plaintiff has documentary evidence to show that he fully exhausted his administrative remedies as to any of the claims that defendants contend he failed to exhaust, he should submit those records to the court. That is the only way he can successfully defeat defendants' motion.

Nearly two weeks after the deadline had passed for the submission of materials opposing defendants' motion to dismiss, plaintiff filed a motion seeking appointment of counsel. In that motion, plaintiff indicates that he has been unable to oppose defendants' motion to dismiss because he has exhausted his legal loan funds. In a separate order entered today, I have denied plaintiff's motion. As I observe in the order, plaintiff was able to submit 19 pages of material in support of his motion for appointment of counsel. He could have used his limited resources to respond to defendants' motion but chose to divert his efforts and resources elsewhere.

### C. *Defendants' Proof*

Although plaintiff has not opposed defendants' motion, failure to exhaust is an affirmative defense and for that reason, defendants bear the burden of proof. Fed. R.Civ.P. 8(c); *Massey,* 196 F.3d at 735. To that end, they have submitted all 121 inmate complaints that plaintiff filed since he was placed in the Wisconsin Secure Program Facility in Boscobel, Wisconsin, through the date on which he initiated this suit. This is the appropriate time frame. According to plaintiff's complaint, all of the alleged violations of his constitutional rights have occurred since he has been incarcerated at the Wisconsin Secure Program Facility. The date on which he filed the complaint initiating this suit is the appropriate cut-off date because exhaustion of administrative remedies is a condition precedent to filing suit and therefore, must be complete at the time the com-

plaint is filed with the court. *Dixon*, 291 F.3d at 488. Defendants argue that these inmate complaints show plaintiff failed to exhaust his administrative remedies with respect to twelve of his claims, specifically, those claims numbered 4, 5, 6, 10, 11, 12, 14, 22, 23, 24, 26 and 27 above.

### 1. *Plaintiff's failure to exhaust claims 4, 5, 6, 10, 11, 14, 24 and 27*

Defendants contend that plaintiff did not file an offender complaint with respect to claims 4, 5, 6, 10, 11, 14 and 27. After reading through the 121 inmate grievances plaintiff filed between the time he was placed in the Wisconsin Secure Program Facility and the date on which this action was initiated, I conclude that defendants are correct that plaintiff failed to file any offender complaints regarding these claims. Accordingly, claims 4, 5, 6, 10, 11, 14 and 27 will be dismissed.

■ I will also grant defendants' motion as to claim 23. In claim 23, plaintiff contends that defendant Berge has a policy under which inmates are allowed to exchange their empty toilet paper roll for a new one only three times each week and which includes no provision for an emergency situation, in violation of the Eighth Amendment. Defendants note that plaintiff filed SMCI–2000–22697, in which he complained about not receiving any toilet paper for 48 hours. As defendants correctly observe, plaintiff's failure to appeal the dismissal of this complaint means that administrative remedies have not been exhausted with respect to it. *Pozo*, 286 F.3d at 1023 ("unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred"). I note that plaintiff also filed SMCI–2001–6438, in which he complained that he was placed on a restriction for fourteen days pursuant to which he was allowed only twelve squares of toilet paper. Although this inmate complaint deals with provision of toilet paper in general, it relates to a different policy from the one plaintiff challenges in this case. Accordingly, it does not satisfy § 1997e(a).

■ Finally, I will grant defendants' motion to dismiss claim 24. Defendants concede that plaintiff raised his grievance about inadequate provision of hygiene products in SMCI–2002–23720, but argue that a final decision had not been rendered with respect to this complaint at the time this action was initiated. Plaintiff filed his complaint on July 31, 2002. Although plaintiff filed SMCI–2002–23720 on July 4, 2002, the Office of the Secretary of the Department of Corrections did not issue a decision on plaintiff's appeal until August 8, 2002. Total exhaustion is a precondition to filing suit. *Dixon*, 291 F.3d at 488; *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir.2004) (exhaustion requirement intended to afford "opportunity to address [ ] problems presented in inmate complaints *before* [ ] initiation of a federal lawsuit"). Because plaintiff failed to exhaust SMCI–2002–23720 completely before filing this action, defendants' motion to dismiss will be granted with respect to this claim.

### 2. *Insufficient evidence of failure to exhaust claims 12 and 26*

Defendant argues that plaintiff failed to submit an offender complaint regarding claims 12 and 26. However, the 121 inmate complaints defendants submitted contain one inmate complaint relating to claim 12 and two relating to claim 26. With respect to claim 12 (defendants Berge and Litscher had a policy depriving plaintiff of a prayer rug, prayer cap and a cross in violation of the First Amendment free exercise clause), plaintiff submitted SMCI–2001–7213, in which he complained that he was not permitted to have a cross

and noted that Muslims were allowed to have prayer rugs and caps. As to claim 26 (defendants Berge and Litscher have subjected plaintiff to sleep deprivation by forcing him to live in a constantly illuminated cell and defendant Jantzen subjected plaintiff to sleep deprivation by kicking his door and putting on "high beam lights" in the middle of the night), plaintiff filed two inmate complaints: SMCI–2001–7735 and SMCI–2002–21003. In SMCI–2001–7735, plaintiff complained that the twenty-four hour illumination policy was causing his eyes to deteriorate prematurely and in SMCI–2002–21003, plaintiff complained that defendant Jantzen repeatedly turned on the high beam lights in plaintiff's cell during the night.

However, defendants did not submit materials documenting the administrative history of these three inmate complaints, making it impossible to determine whether plaintiff has completely exhausted his administrative remedies as to these claims. Perhaps defendants did not submit additional information about these offender complaints because they did not identify them as relevant to the motion. Accordingly, I will stay a decision with respect to claims 12 and 26 to give defendants an opportunity to supplement their submission with information about plaintiff's appeals fo these complaints. If defendants do not adduce evidence showing that plaintiff failed to completely exhaust these offender complaints, I will deny their motion with respect to the corresponding claims for failure to meet their burden.

### 3. Failure to Exhaust Claim 22

■ With respect to claim 22, defendants concede that plaintiff filed SMCI–2001–35673, which dealt with the lack of outdoor recreational opportunities, but argue that plaintiff failed to timely appeal it to the Corrections Complaint Examiner.

SMCI–2001–35673, the only inmate complaint plaintiff filed regarding inadequate recreational facilities, was dismissed on December 17, 2001. Wis. Admin. Code § DOC 310.13 requires that appeals be taken within ten days but plaintiff did not file his appeal until January 7, 2002. In Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir.2002) the Court of Appeals for the Seventh Circuit held that an inmate had failed to exhaust administrative remedies because he had failed to timely appeal the dismissal of his complaint. In that case, the reviewing agency rejected the plaintiff's appeal on the sole basis that it had been filed late; no decision was reached on the merits. Id. The court limited its holding to situations in which "the state stands on its time limits and rejects the filing as too late." Id. It noted that "if a state accepts a belated filing, and considers it on the merits, that step makes filing 'proper' for purposes of state law and avoids [the defense of failure to] exhaust[ ]." Id. (citing Jefferson v. Welborn, 222 F.3d 286 (7th Cir.2000)); see also Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir.2004). However, the court declined to reach any conclusion about exhaustion when a complaint is rejected as both late and unmeritorious. Id.

In recommending dismissal of plaintiff's inmate complaint No. SMCI–2001–35673, the inmate complaint examiner noted in her report that although Wis. Admin. Code § DOC 309.36 requires the Department of Corrections to provide inmates with as much "leisure time" as is practicable, it defines leisure time to include any "free time outside the cell or room during which the inmate may be involved in activities such as recreational reading, sports, film and television viewing and handicrafts." The corrections complaint examiner concurred with the recommendation, stating as follows:

In agreement with and based on the ICE report, also noting this appeal was not timely filed in accordance with DOC 310.13(1) Wis. Adm.Code, it is recommended this complaint be dismissed.

The Office of the Secretary of the Department of Corrections adopted the corrections complaint examiner's recommendation.

Much of the court's reasoning in *Pozo* was based on analogy to the use of federal habeas petitions to collaterally attack state court rulings that had not been timely appealed to state appellate courts. *Pozo*, 286 F.3d at 1024–25. Pursuant to 28 U.S.C. § 2254(b)(1), petitioners must exhaust state judicial remedies before seeking habeas relief in federal court. Since *Pozo* was decided, both the United States Supreme Court and the Court of Appeals for the Seventh Circuit have answered the question about mixed rejections in the habeas context. *Carey v. Saffold*, 536 U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (U.S.2002) *Gray v. Briley*, 305 F.3d 777, 779 (7th Cir.2002); *Brooks v. Walls*, 301 F.3d 839, 843 (7th Cir.2002). In these cases, the court recognizes that "a clear ruling from the state court that a filing was untimely would 'be the end of the matter,' even if the court also addressed the merits of the claim or if 'its timeliness ruling was "entangled" with the merits.'" *Gray*, 305 F.3d at 779 (quoting *Saffold*, 536 U.S. at 226, 122 S.Ct. 2134); *see also Brooks*, 301 F.3d at 843 (a "dual-ground decision (untimeliness plus the merits) shows that the state application was not 'properly filed.'")

However, the rationale provided for this rule in the habeas context was to "protect the federal system from being forced to hear stale claims." *Saffold*, 536 U.S. at 226, 122 S.Ct. 2134. By contrast, the purpose of the PLRA's exhaustion requirement is to allow state agencies an opportunity to cure the alleged violation before being subject to litigation. When the Office of the Secretary of the Department of Corrections makes a ruling on the merits, that objective has been satisfied. Further, the concern that "the incentive that § 1997e(a) provides for prisoners to use the state process [might] disappear" is not implicated. *Pozo*, 286 F.3d at 1025. So long as an inmate faces a real possibility of losing a claim for failure to timely appeal, he has an incentive to abide by procedural requirements. Officials reviewing the appeal have discretion to reject the appeal on the sole ground of untimeliness. Therefore, the possibility is real that an inmate might lose a claim by failing to timely appeal. Because the office of the secretary addressed the merits of plaintiff's appeal, the complete exhaustion requirement is satisfied with respect to claim 22. Accordingly, defendants' motion will be denied with respect to this claim.

### D. *Claim 28*

▮ Although Judge Adelman allowed plaintiff to proceed on claim 28, that an unidentified defendant destroyed some of his personal property in violation of his right to due process, I will dismiss this claim pursuant to 28 U.S.C. § 1915A for lack of legal merit. "[T]he deprivation by the state of a constitutionally protected interest in life, liberty, or property is not in and of itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003) (citations and quotations omitted). In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court made clear that an inmate has no due process claim for the intentional deprivation of property if the state has made available to him a suitable post-deprivation remedy. As long as state remedies are available for the loss of property,

neither intentional nor negligent deprivation of property gives rise to a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

The state of Wisconsin provides several post-deprivation procedures for challenging the taking of property. According to Article I, § 9 of the Wisconsin Constitution,

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without delay, conformably to the laws.

Sections 810 and 893 of the Wisconsin Statutes provide plaintiff with replevin and tort remedies. Section 810.01 provides a remedy for the retrieval of wrongfully taken or detained property. Section 893 contains provisions concerning tort actions to recover damages for wrongfully taken or detained personal property and for the recovery of the property. Because plaintiff has post-deprivation procedures available to him under state law and he has not alleged that he was unable to use them, his due process claim lacks legal merit. Accordingly, I will dismiss this claim

### E. *Effect of Jones 'el Settlement*

■ One final note is warranted. On March 28, 2002, I approved the settlement agreement in the class action of *Jones 'El v. Berge*, 00–C–421–C, which addressed many of the conditions of confinement that plaintiff now complains of in claims 12, 18, 19 and 22. Plaintiff is a member of the class certified in *Jones 'El, id.*, dkt. # 37, slip op. at 13 (order dated February 15, 2001) (class defined as "all persons who are now, or will in the future be, confined in the Supermax Correctional Institution in Boscobel, Wisconsin"). Because there

was no finding of liability in *Jones 'El*, it will be up to plaintiff to prove that his constitutional rights were violated. Plaintiff will be able to seek monetary damages only through March 28, 2002, the date the consent decree was entered and will not be able to obtain injunctive or declaratory relief against Berge on these claims.

### ORDER

IT IS ORDERED that the motion for partial dismissal of plaintiff's complaint brought by defendants Jon Litscher, John Kussmaul, D. Esser, Jantzen, Fuerstenburg, Gerald Berge and Tim Haines is GRANTED with respect to eight of plaintiff Jonathan Cole's claims. The following claims are DISMISSED for failure to exhaust administrative remedies:

(1) Defendants Esser and Fuerstenburg retaliated against plaintiff for filing inmate complaints by turning on high beam lights in his cell for three hours;

(2) Defendant Kussmaul retaliated against plaintiff for filing inmate complaints by entering false allegations in his conduct log;

(3) Defendant Kussmaul retaliated against plaintiff for filing inmate complaints by installing a video camera in his cell;

(4) Defendant Kussmaul retaliated against plaintiff for filing inmate complaints by denying him access to the library;

(5) Defendant Berge had a policy requiring plaintiff to stand naked during clothing exchanges with female correctional officers for the purpose of embarrassing plaintiff in violation of his Eighth Amendment right to be free of cruel and unusual punishment;

(6) On May 15, 2002, an unidentified defendant did not send a complaint that plaintiff tried to mail to an attor-

ney in violation of plaintiff's due process and First Amendment rights;

(7) Defendant Berge has a policy under which inmates are allowed to exchange their empty toilet paper roll for a new one only three times each week and provides no provision for emergency situations, in violation of the Eighth Amendment;

(8) An unidentified defendant deprived plaintiff of shampoo, conditioner and hair grease despite knowing that plaintiff's scalp cracked and was bleeding in violation of the Eighth Amendment;

(9) Defendant Berge adopted a policy that causes plaintiff's cell temperature to be either extremely hot or cold.

Further, IT IS ORDERED that defendants' motion is STAYED with respect to the following two claims:

(1) Defendant Berge and Litscher had a policy that deprived plaintiff of a prayer rug, prayer cap and a cross in violation of the First Amendment free exercise clause;

(2) Defendants Berge and Litscher have subjected plaintiff to sleep deprivation by forcing him to live in a constantly illuminated cell and defendant Jantzen subjected plaintiff to sleep deprivation by kicking his door and putting on "high beam lights" in the middle of the night.

Defendants will have until November 8, 2004 in which to show that plaintiff failed to completely exhaust his offender complaints SMCI–2001–7213, SMCI–2001–7735 or SMCI–2002–21003.

In addition, IT IS ORDERED that defendants' motion to dismiss for failure to exhaust is DENIED with respect to plaintiff's claim that defendants Berge and Litscher denied him access to adequate indoor and outdoor recreation and exercise facilities.

Further, IT IS CLARIFIED that plaintiff's claims that defendant Berge violated plaintiff's First Amendment rights by adopting a policy under which plaintiff was denied a daily bread study guide and by denying him access to a telephone for lengthy periods were DISMISSED from this action on March 15, 2004 because these claims are sub-parts of plaintiff's challenge to five-tiered incentive program.

Finally, IT IS ORDERED that plaintiff's claim that an unidentified defendant destroyed some of plaintiff's personal property in violation of his right to due process is also DISMISSED for lack of legal merit.

The following is a list of the claims remaining in this suit:

(1–3) Defendants Esser and Furstenberg retaliated against plaintiff for filing inmate complaints by

(1) threatening him with having to eat "seg loaf";

(2) issuing him a conduct report and placing him on a "restrictive continuum" for ten days;

(3) requiring him to sit on the floor without any clothes on when his cell was opened;

(4–6) Defendant Kussmaul retaliated against plaintiff for filing inmate complaints by

(4) ordering that he be placed in a cell containing toxic fumes;

(5) transferring him from the "Alpha Unit" to the "Echo Unit" where plaintiff believed he was unsafe because of toxic fumes;

(6) requiring him to wear ankle cuffs that were too small and cut his legs;

(7) Defendant Berge and Litscher had a policy that deprived plaintiff of a prayer rug, prayer cap and a cross in

violation of the First Amendment free exercise clause; [DECISION STAYED]

(8) On April 14, 2002, defendant Jantzen prevented plaintiff from sending a brief to the Wisconsin Court of Appeals and Attorney General in violation of the First Amendment by denying plaintiff's request for legal loan disbursement to cover the cost of postage because "the date on the disbursement [was] wrong";

(9) Defendant Berge's library policy is so restrictive that plaintiff was prevented from timely filing a brief with a Wisconsin state court and as a result, his case was dismissed;

(10) Defendant Haines confiscated legal documents from another inmate who was assisting plaintiff litigate two cases in state court; the documents related to plaintiff's two state court actions;

(11) Defendant Melby disclosed the name of plaintiff's prescribed medication to a prison official who was writing plaintiff a conduct report, defendant Bartels consented to the disclosure of plaintiff's medical record and defendant Catalano's failure to provide adequate training and supervision to his employees caused these disclosures which violated plaintiff's constitutional right to privacy;

(12) Defendants Prison Health Services, Bartels, Manning and Olson violated plaintiff's rights under the Eighth Amendment by failing to provide him with adequate and appropriate medical care;

(13) Defendant Prison Health Services and Bartels violated the Eighth Amendment by failing to provide plaintiff with adequate mental health care services;

(14) Defendant Prison Health Services and Bartels violated plaintiff's rights under the Eighth Amendment by having policies which deprive plaintiff of milk that is not non-fat and adequate amounts of food;

(15) Defendant Berge and Litscher had a policy under which plaintiff was denied food for days at a time for refusing to keep the lights in his cell on;

(16) Defendants Berge and Litscher denied plaintiff access to adequate indoor and outdoor recreation and exercise facilities;

(17) Defendant Berge and Litscher have a policy under which inmates are only allowed to exchange their empty toilet paper roll for a new one three times each week and which provides no provision for an emergency situations in violation of the Eighth Amendment;

(18) Defendants Berge, Haines and Kussmaul intentionally injured plaintiff by forcing him to wear ankle cuffs that they knew were too tight;

(19) Defendants Berge and Litscher have subjected plaintiff to sleep deprivation by forcing him to live in a constantly illuminated cell and defendant Jantzen subjected plaintiff to sleep deprivation by kicking his door and putting on "high beam lights" in the middle of the night. [DECISION STAYED]